o

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| ALFREDO FLORES, et al., § | |
| § | |
| Plaintiffs, § | |
| vs. § | |
| § | Civil Action No. L-06-135 |
| ASI COMPUTER TECHNOLOGIES INC, § | |
| et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM AND ORDER

Plaintiffs Alfredo Flores and Patrick Wong sue Defendant ASI Computer Technologies, Inc., and ASI Asset Holding's, LLC (collectively "ASI") for breach of the October 12, 2005, "Binding Term Sheet Agreement for Resolution of Concurso Proceeding and Transfer of Equity Interests" (Binding Term Sheet Agreement) (Dkt. 14-1). Flores and Wong have also brought a claim for fraud arising from negotiations preceding the Binding Term Sheet Agreement, a claim for promissory estoppel, and a claim for breach of their June 29, 2005, employment agreements with ASI (Dkt. Nos. 14-2, 14-3). (Dkt. 60, 2nd Am. Compl. ¶¶ 31–33.) ASI moves for summary judgment that Texas's "unlawful acts rule" bars Flores and Wong's claims for breach of the Binding Term Sheet Agreement, fraud, and promissory estoppel. (Dkt. 98, ASI Mot. Summ. J. ¶¶ 2, 4.)

## SUMMARY JUDGMENT STANDARD

The Court should render summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The Court must review the evidence and draw inferences from it in the light most favorable to the nonmoving party. Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003). ASI filed its motion over eleven months before the close of discovery in this case. However, ASI asserts that it is entitled to summary judgment on the basis of undisputed facts drawn from Flores and Wong's filings. (ASI Mot. Summ. J. ¶ 1.) In particular, ASI relies on assertions Flores and Wong make in their second amended complaint (Dkt. 60), on documentary exhibits attached to Flores and Wong's first amended complaint (Dkt. Nos. 14-1, 14-2, 14-3), on Flores and Wong's response (Dkt. 31) to ASI's motion to dismiss, and on a report on Mexican law prepared by Flores and Wong's experts (Dkt. 66-1). The Court shall decide the motion on the basis of facts drawn from these

materials, analyzed in the light most favorable to Flores and Wong.[1]

## BACKGROUND

Flores and Wong were the majority owners and officers of Mexmal Group, Ltd, a holding company organized under Texas law. Mexmal Group's holdings included several other entities organized under U.S. law: Dinastia, LP, Dinastia International Corporation, Dinamex Inc., and Patel Investments, LP ("the Dinastia entities"), as well as a number of companies organized under the laws of Mexico, including Mexmal Mayorista S.A. de C.V. ("Mayorista").  (2nd Am. Compl. ¶¶ 8-9; Dkt. 66-1, Pl. Suppl. Expert Rpt. § 2.1.)  Flores and Wong were the officers of the Dinastia entities.  (2nd Am. Compl. ¶ 9.)  International Finance Corporation ("IFC") loaned $10,000,000 to Mayorista. (Binding Term Sheet Agreement p. 1, Recital ¶ B.)  As collateral, IFC received secured interests in stock of Mexmal Group, the Dinastia entities, Mayorista, and Mexmal Group's other Mexican entities.  Id.

---

[1] The Court has also recited some findings of fact made in the related U.S. Bankruptcy case, In re Dinastia L.P., et al., No. 05-33650 (Bankr. S.D. Tex., Mar. 10, 2005).  However, those facts are presented for background purposes only.

A. The Dinastia Entities' U.S. Bankruptcy

On March 10, 2005, the Dinastia entities filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. (2nd Am. Compl. ¶ 9.) See In re Dinastia L.P., et al., No. 05-33650 (Bankr. S.D. Tex. Mar. 10, 2005). On March 15, 2005, Mayorista filed a *Solicitud de Declaracion de Concurso Mercantil* in Monterrey, Nuevo Leon, Mexico. (Pl. Suppl. Expert Rpt. §§ 2.2-2.3; 2nd Am. Compl. ¶ 8.) A *concurso mercantil* is a Mexican law commercial bankruptcy proceeding. (Pl. Suppl. Expert Rpt. §§ 2.2-2.3.) A *concurso mercantil* is a Mexican law commercial bankruptcy proceeding. (Id.) IFC was the largest creditor in Mayorista's *concurso*, but Mayorista also owed a substantial amount in unpaid taxes and fines to the *Secratoría de Hacienda y Crédito Público* ("the Mexican Finance Ministry"). (2nd Am. Compl. ¶¶ 11, 12; Pl. Suppl. Expert Rpt. §§ 2.10, 2.23, 2.24.) Flores and Wong are personally liable for Mayorista's tax debt. (2nd Am. Compl. ¶ 22.) Their failure to have Mayorista pay the taxes was a crime under the Mexican tax code, as is their continued failure to fulfill their personal obligations to pay the debt. (Pl. Suppl. Expert Rpt. § 3.5.)

The Dinastia entities' U.S. bankruptcy culminated in an arrangement under which an outside purchaser, MaxUSA, Inc., was to acquire the Dinastia entities and provide funding for a

Chapter 11 plan.  (Bankr. No. 05-33650, Dkt. 148 at ¶¶ 7-8.)  In order to secure agreement on the proposed plan, MaxUSA agreed that it would also provide funds necessary for the resolution of Mayorista's *concurso*.  MaxUSA's obligations with respect to the *concurso* were memorialized in the "IFC Settlement Agreement" (Dkt. 21-5, Bankr. No. 05-33650, Dkt. Nos. 148-1, 148-2), among Mexmal Group, MaxUSA, and IFC.  (Binding Term Sheet Agreement p. 1, Recital ¶ D; Bankr. No. 05-33650, Dkt. 148 at ¶ 9.)  MaxUSA ultimately failed to purchase the Dinastia entities' assets.  (Binding Term Sheet Agreement p. 2, Recital ¶ E; Bankr. No. 05-33650, Dkt. 173, Order of June 13, 2005 ¶ 3.)  Flores and Wong sought out ASI to take MaxUSA's place as purchaser and supplier of post-petition financing.  (See 2nd Am. Compl. ¶¶ 8-9.)  The Bankruptcy Court ordered that ASI would have until June 28, 2005, to purchase the Dinastia entities and assume MaxUSA's obligations under the IFC Settlement Agreement.  (Binding Term Sheet Agreement p. 1, Recitals ¶¶ D-F; Bankr. No. 05-33650, Dkt. 173, Order of June 13, 2005, pp. 5-6.)  ASI did so.  (Binding Term Sheet Agreement p. 2, Recitals ¶¶ G-H.)

B. The Binding Term Sheet Agreement

In order to resolve its obligations under the IFC Settlement Agreement, ASI negotiated a subsequent agreement with IFC and a subsequent agreement with Flores and Wong.  Under the

subsequent agreement with IFC, IFC sold Mayorista's debt to ASI, along with IFC's secured interests in stock of Mexmal Group, Mayorista, and Mexmal Group's other Mexican holdings. (Binding Term Sheet Agreement p. 2, Recitals ¶¶ G, H.) ASI then negotiated the Binding Term Sheet agreement with Flores and Wong. (Id. at p. 1, p. 2, Recital ¶ I.)

ASI and Flores and Wong executed the Binding Term Sheet Agreement on October 12, 2005.[2] Flores and Wong agreed to transfer their entire interests in Mexmal Group and all of its holdings, including Mayorista, to ASI. (Binding Term Sheet Agmt., ¶¶ 5-6.) ASI agreed to complete Mayorista's *concurso*, and to pay off Mayorista's Mexican tax debt:

> ASI will proceed with the completion of the Concurso in accordance with the terms and conditions of the IFC Settlement Agreement (as modified herein) and subject to the provisions of applicable Mexico law, including resolution of all tax liabilities of Mexmal Mayorista asserted by the Mexico taxing authority . . . in the Concurso and payment of such liabilities in a manner agreed on by the [taxing authority].

(Id. at ¶ 1.) Flores and Wong "represent[ed] that the principal amount of the tax liabilities alleged to be owed to the [Mexican Finance Ministry] is $2,141,000 as of September 26, 2005 and that there has been no material increase in such amount

---

[2] On October 23, 2005, ASI and Flores and Wong executed the 2-year employment agreements that are the subject of Flores and Wong's second breach of contract claim. (2nd Am. Compl. ¶¶ 27-30.) The instant motion for summary judgment does not concern that claim.

thereafter through the date of [the Binding Term Sheet Agreement]." (Id.) Flores and Wong also agreed to "use their best efforts to negotiate a reduction of all of the tax liabilities to an amount within the range of $575,000 to $1 million." (Id.) After the agreement, Flores and Wong transferred their interests in Mexmal Group and its holdings to ASI. (Pl. Suppl. Expert Rpt. § 2.6; 2nd Am. Compl. ¶ 10.) Flores remains Mayorista's representative in the *concurso*. (2nd Am. Compl. ¶ 22.)

C. Mayorista's *Concurso Mercantil*

*Concurso mercantil* proceedings are supervised by the Mexican Insolvency Court. A *concurso* begins with a "conciliation" stage, during which an appointed "conciliator" produces a definitive list of debts and "recognized creditors" for approval of the insolvency court. (Pl. Suppl. Expert Rpt. § 3.1.) The conciliator then attempts to induce the insolvent entity and its recognized creditors to negotiate a creditors' agreement, the equivalent of a Chapter 11 reorganization plan. (Id.) A creditors' agreement requires consent by creditors holding at least fifty percent of the non-tax debt listed on the definitive creditors' list. (Id. at § 3.3.) The *concurso* comes to an end if an agreement is reached and approved by the

insolvency court. (Id. at § 3.1.) If no agreement is reached, the *concurso* becomes a liquidation. (Id.)

Mexican insolvency law treats tax debt very differently from other liabilities. The insolvency court has no authority to reduce a tax debt during a *concurso*, nor may the court definitively determine a tax debt's amount. (Pl. Suppl. Expert Rpt. §§ 3.4.1, 3.4.3.) Although tax debt will appear on the definitive creditors' list, the listed figures are never more than estimates, because the Finance Ministry at all times retains authority to independently assess and collect unpaid taxes. (Id. at §§ 3.4.1, 3.4.2.) The Finance Ministry has no standing to participate in any stage of the *concurso* proceeding, and it is prohibited by statute from negotiating a reduction of tax debt with an entity in *concurso mercantil*. (Pl. Suppl. Expert Rpt. §§ 3.4.1, 3.4.4.) Negotiations to reduce tax debt can begin only if the entity emerges from the *concurso* with a creditors' agreement. (Id. at § 3.4.1.)

After purchasing the IFC debt, ASI controlled 52.8% of the total debt in the Mayorista *concurso*, but ASI refused to participate in the *concurso* and did not notify the presiding officials that it had purchased the IFC debt. (Id. at §§ 3.3, 3.4.4.) IFC appeared as the debt's owner on the conciliator's definitive list of Mayorista's creditors, which the insolvency court approved on January 24, 2006. (Id. at § 2.10.) A

creditors' agreement was impossible without participation of IFC or ASI, and Mayorista's *concurso* became a liquidation on August 30, 2006. (Id. at § 2.15.) This foreclosed any possibility of Flores and Wong negotiating a reduction of the tax debt with the Finance Ministry.³ (Pl. Suppl. Expert Rpt. §§ 3.4.4-3.4.5.) In December, 2006, the Finance Ministry determined that Mayorista's debt for unpaid taxes in 2005 is $214,148. (Id. at § 2.23.) In June, 2007, the Finance Ministry determined that Mayorista's debt for unpaid taxes in 2004 is $4,966,470.70. (Id. at § 2.24.)

ASI has not paid any of Mayorista's tax debt. (2nd Am. Compl. ¶¶ 11-14, 17, 24-25.) Flores and Wong remain exposed to possible criminal prosecution for the unpaid taxes, which could culminate in a punishment of up to ten years' imprisonment. (Pl. Suppl. Expert Rpt. § 3.5.) Flores and Wong filed this suit against ASI on September 12, 2006. They contend that ASI has breached the Binding Term Sheet Agreement's provisions concerning the Mexican bankruptcy:

> Defendant, however, have [sic] failed to perform all of their [sic] contractual obligations, including but not limited to completing the Concurso process, cooperating with the Concurso official, failing [sic] to pay off Mexican debtors or even make an offer of the same, failing to disclose in the Concurso proceedings IFC's assignment to ASI, failing to assume the personal

---

³ Even if there had been a creditors' agreement, it is not clear that Mexican law would have permitted giving Mayorista a tax reduction. (Pl. Suppl. Expert Rpt. § 3.4.5.)

>    guarantees and liability still held by Plaintiffs in
>    Mexico, [and] failing to pay [the Mexican Finance
>    Ministry] for Mexican taxes owed by [Mayorista] . . . .

(2nd Am. Compl. ¶ 26.)  ASI has moved for summary judgment against Flores and Wong's claims based ASI's on alleged failure to pay Mayorista's tax debt.  ASI asserts that Texas's unlawful acts rule bars Flores and Wong from relief for any injury caused by their unlawful failure to pay Mayorista's taxes.

## DISCUSSION

A. The Unlawful Acts Rule

   The seminal case for Texas's unlawful acts rule is Gulf, Colorado & Santa Fe Railway Co. v. Johnson, 9 S.W. 602 (Tex. 1888).  In Johnson, the defendant was sued for damaging the plaintiff's building.  Id. at 602.  The defendant asserted that the suit was barred because the building housed an illegal gaming business at the time it was damaged.  Id.  The Texas Supreme Court rejected the defendant's argument, but the court supplied two formulations of the unlawful acts rule still frequently cited by Texas's appellate courts:

>    It may be assumed, as undisputed doctrine, that no
>    action will lie to recover a claim for damages, if to
>    establish it the plaintiff requires aid from an illegal
>    transaction, or is under the necessity of showing or in
>    any manner depending upon an illegal act to which he is
>    a party.
>     (. . .)  In those cases where it is shown that, at the
>    time of the injury, the plaintiff was engaged in the
>    denounced or illegal act, the rule is, if the illegal
>    act contributed to the injury, he cannot recover; but,

> if plaintiff's act did not contribute to the injury, the fact alone that at the time he was engaged in an act in violation of law will not of itself preclude a recovery.

Id. at 603.  This Court has found no more recent case in which the Texas Supreme Court has stated the rule in such sweeping terms.  However, Texas courts of appeals continue to quote the Johnson court's categorical formulation.  E.g., Rodriquez v. Love, 860 S.W.2d 541, 544 (Tex. App.—El Paso 1993, no writ) (citing Johnson for the proposition that the rule bars any action "predicated upon an admittedly unlawful act of the party asserting it"); see also, e.g., Dover v. Baker, Brown, Sharman & Parker, 859 S.W.2d 441, 450 (Tex. App.—Houston [1st Dist.] 1993, no writ).  The Texas Supreme Court stated the rule in somewhat narrower terms in Kokernot v. Gilstrap, explaining that an agreement underlying an illegal mortgage "f[ell] within that class of contracts which are held to be illegal and void and upon which a plaintiff cannot recover when it is necessary for him to prove his own illegal acts as part of his cause of action." 187 S.W.2d 368, 370 (Tex. 1945).  However, in Graham v. Dean, 188 S.W.2d 372 (Tex. 1945), the court indicated that the rule should not be applied to circumstances in which it would not serve the policy considerations that justify it.  The Graham court held that the rule did not bar recovery against a carrier for damage to a load of machinery that the carrier had not been legally licensed to haul, because the plaintiffs did not know

the carrier was unlicensed. Id. at 372. The court concluded that "[i]t would be in derogation and not in furtherance of the public policy of this State to permit the defendant to set up his own illegal conduct to defeat his obligation to [plaintiffs] . . . ." Id.

Other cases indicate that the rule is more flexible than Johnson's categorical language suggests. See Rico v. Flores, 481 F.3d 234, 243-44 (5th Cir. 2007). Indeed, "there are multiple versions of the . . . rule, versions which emphasize different links between a plaintiff's illegal acts and the injuries suffered." Id. at 243. The rule does not, for example, preclude recovery where the plaintiff's unlawful act was not the proximate cause of the injury, even though the injury would not have occurred if the plaintiff had not committed the unlawful act. St. Louis, B. & M. Ry. Co. v. Price, 269 S.W. 422, 423, 428 (Tex. Comm'n App. 1925, judgm't adopted) (motorist who was driving without a license may recover for injuries suffered in collision with train); Petta v. Rivera, 985 S.W.2d 199, 204 (Tex. App.—Corpus Christi 1998, review granted) (rule did not bar suit arising from police officer firing shots at an illegally fleeing motorist), rev'd on other grounds sub nom. Texas Dept. of Public Safety v. Petta, 44. S.W.3d 575 (Tex. 2001); see also Pyeatt v. Stroud, 264 S.W. 307, 309 (Tex. Civ. App.—Galveston 1924, writ granted), aff'd, 269

S.W. 430 (Tex. Comm'n. App. 1925, judgm't adopted) (whether plaintiff motorcyclist had stolen his motorcycle was irrelevant to whether he could recover for a collision resulting from defendant motorist's willful wrong).

B. Analysis

The rationale of the unlawful acts rule does not favor refusing to enforce the Binding Term Sheet Agreement in this case. That agreement did not require, reward, or facilitate Flores and Wong's failure to pay Mayorista's taxes, which occurred before the agreement was made. Rather, the agreement obliged ASI to make the Mexican Government whole for a crime that had already been committed. Texas courts generally refuse to enforce contractual or tort obligations that would require defendants to share losses that a plaintiff has suffered as a proximate result of the plaintiff's own criminal acts. E.g., Ward v. Emmett, 37 S.W.3d 500, 503 (Tex. App.—San Antonio 2001, n.w.h.); Saks v. Sawtelle, Good, Davison & Toilo, 880 S.W.2d 466, 470–71 (Tex. App.—San Antonio 1994, writ denied). The Court has found no case, however, in which Texas courts have refused to enforce an obligation, incurred after the plaintiff's crime, to make the sole victim of that crime whole. Obviously, the public policy behind the Mexican tax code is to ensure that taxes due to the Mexican Government are collected. Assuming the

Finance Ministry might be lenient with a delinquent taxpayer or choose to negotiate a sum in order to facilitate collection, it would not serve public policy to refuse enforcing a third party's obligation to pay a tax debt simply because doing so might allow the tax debtor to escape prosecution. The Court is skeptical that Texas courts would bar Flores and Wong's suit without some indication that enforcing the Binding Term Sheet Agreement would hinder Mexican authorities' efforts to ensure that Mayorista's taxes are paid. In <u>Duncan Land & Exploration, Inc. v. Littlepage</u>, 984 S.W.2d 318 (Tex.App.—Fort Worth 1998, review denied), the plaintiff could prove his right to recover under an oil and gas lease only by demonstrating that he had operated an oil well in violation of an order by the Texas Railroad Commission. <u>Id.</u> at 322-23. The Court refused to apply the unlawful acts rule, reasoning that punishment for violating the order should be left to the Railroad Commission, <u>id</u>. at 330, and noting that in oil and gas cases "courts . . . have only invoked the illegal acts rule against a private entity when doing so favored the Railroad Commission." <u>Id.</u> at 330, 330 n.4.

To the extent Flores and Wong seek to compel ASI to make the Mexican Government whole for Flores and Wong's failure to pay Mayorista's tax debt, the Court concludes that the unlawful

14 / 16

acts rule does not bar their suit.[4] However, the fact that much of Flores and Wong's alleged injury is the result of their own criminal conduct may preclude some forms of relief that would do nothing to make the Mexican Government whole. For example, the Court does not now decide whether Flores and Wong may seek to rescind the Binding Term Sheet Agreement (see Pl. Am. Compl. ¶ 35), a remedy that could relieve ASI of any obligation to pay Mayorista's tax debt. Also, Flores and Wong seek compensatory damages for several alleged injuries including "emotional pain," "inconvenience," "[l]oss of enjoyment of life," and "mental anguish" (Pl. Am. Compl. ¶¶ 34e, 34g, 34i, 34j-34k), and they seek exemplary damages "[i]n order to punish [ASI]" for acting "with malice or reckless indifference to the protected rights of [Flores and Wong]." (Pl. Am. Compl. ¶ 36.) The unlawful acts rule may bar Flores and Wong from seeking damages that would force ASI to share in the losses caused by their failure to pay Mayorista's tax debt. Again, the Court cannot fully assess the applicability of the unlawful acts rule without the benefit of a fully developed record. Further, the rule permits recovery against a defendant bearing greater culpability for the unlawful

---

[4] Flores and Wong do not include specific performance in their prayer for relief. (Pl. Second Am. Compl. p. 17.) However, the Federal Rules of Civil Procedure state that a district court's final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Rule 54(c), Fed. R. Civ. P.

act than does the plaintiff. De Vall v. Strunk, 96 S.W.2d 245, 247 (Tex.Civ.App. 1936). ASI appears to have controlled Mayorista's assets since October, 2005, and the current record contains some indication that ASI has sought to evade the tax debt by affirmative malfeasance that offends Mexican law more severely than Flores and Wong's failure to pay the taxes in the first instance. (Pl. Suppl. Expert Rpt. ¶¶ 2.10, 2.22, 3.2.) However, this issue must also await development of the record.

## CONCLUSION

The unlawful acts rule does not bar Flores and Wong's suit for breach of ASI's alleged obligation to pay Mayorista's tax debt. However, the Court does not at this time decide to what extent the rule permits Flores and Wong to seek relief beyond specific performance. ASI's motion for summary judgment (Dkt. 98) is DENIED. The parties are to proceed with the case according to the Scheduling Order of November 3, 2009. (Dkt. 112.)

DONE at Laredo, TX, this 6th day of July, 2010.

George P. Kazen
Senior United States District Judge